FILED
2012 Aug-31  AM 09:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| SHELANDA HARE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 7:11-CV-1648-VEH** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF, | ) |
| SOCIAL SECURITY | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Shelanda Hare ("Ms. Hare") seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and her application for Supplemental Security Income ("SSI") under Title XVI of the Act. Ms. Hare timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act.[1] The court has carefully considered the record and, for the reasons which follow,

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

finds that the decision of the Commissioner is due to be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Hare is a thirty-two (32) year old female.  (R. at 93.)  She completed the eleventh grade before dropping out to care for her child (R. at 133, 165).  While in school, Ms. Hare made A's and B's, and she did not attend special education classes. (R. at 165.)  Prior to applying for DIB and SSI, Ms. Hare worked as a truck-stop cashier for approximately three years and, before that, as a sitter for one year.  (R. at 115.)  She last worked in January 2006.  (*Id.*)

Ms. Hare contends several health problems keep her from working. Specifically, she suffers from hypertension, pedal edema (swelling of her legs), and obesity.  Ms. Hare also contends that she suffers from depression and mild mental retardation.

Because the evidence regarding Ms. Hare's mental health is at issue in this appeal, the court briefly summarizes it here.  Three non-treating physicians examined Ms. Hare's mental health and reached differing conclusions.  In 2004, Psychologist Jerry Gragg estimated that Ms. Hare has borderline general intelligence but noted that "had she put forth more effort during the mental status portion of the evaluation her intellectual level possibly would have estimated higher than borderline."  (R. at 167.)

In 2007, Psychologist Patricia Sandusky concluded that Ms. Hare "appears capable of functioning in an employment setting in terms of attending and concentrating, interacting with the public, and receiving supervision." (R. at 187–88.) Dr. Sandusky also noted that Ms. Hare put forth little effort during her examination.  (R. at 187.) In 2009, Donald Blanton, Ph.D., administered two objective IQ examinations, the Wechsler Adult Intelligence Scale-IV and the Wide Range Achievement Test.  Based on these tests, Dr. Blanton diagnosed Ms. Hare with mild mental retardation.  (R. at 240.)  Dr. Blanton noted that Ms. Hare "appeared to put good effort into [the test]." (R. at 239.)

Ms. Hare applied for DIB and SSI in July 2007, alleging she became disabled in February 2006.  The Commissioner denied her application in October 2007.  Ms. Hare requested a hearing before an administrative law judge ("ALJ"). (R. at 46.) The ALJ held a hearing on May 29, 2009.  Ms. Hare's counsel appeared on time for the hearing, but Ms. Hare did not. (R. at 28.) Ms. Hare's counsel confirmed that she was aware of the date and time of her hearing. (*Id.*)  She arrived late, after the hearing was over, and the ALJ did not take or consider any testimony from her.  The ALJ, through a show cause letter, allowed Ms. Hare to explain her absence.   (R. at 86.) She apparently failed to show good cause for missing her hearing, and the ALJ declined to hold a supplemental hearing.

The ALJ denied Ms. Hare's claim on October 22, 2009 because he determined she is not "disabled" under the Act.  (R. at 7-24.)  The Appeals Council declined to review the ALJ's decision on April 1, 2011 (R. at 1.)  Ms. Hare filed this lawsuit on May 19, 2011.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*.  The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).

4

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2]   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months."   20 C.F.R. § 404.1505(a).[3]   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."   20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.   20 C.F.R. § 404.1520(a)(4)(i-v).   The Commissioner must determine in sequence:

---

[2]   The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through August 23, 2012.

[3]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At Step One, the ALJ determined that Ms. Hare was not engaged in substantially gainful employment. (R. at 12.) At Step Two, he determined that Ms. Hare has the following severe impairments: morbid obesity, due in part to an eating disorder; pedal edema, high blood pressure; and depression. (R. at 12.) At Step

Three, the ALJ determined that Ms. Hare's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (R. at 13.)

The ALJ then purportedly examined the medical evidence and determined that Ms. Hare had the residual functioning capacity ("RFC") to perform sedentary work with the following limitations: occasionally kneeling, crouching, crawling, climbing ramps and stairs, using her arms and legs to operate push and pedal controls, and no climbing of ladders, ropes, or scaffolds, no work around dangerous machinery, no work in extreme heat or cold. (R. at 20.) The ALJ also limited Ms. Hare to doing routine tasks involving only simple instructions and simple work-related decisions. (*Id.*) The ALJ based his RFC determination on the evaluations conducted by Drs. Abney, Gragg, Sandusky, and, to some extent, Dr. Blanton. The ALJ also based his determination on the "clear lack of any recommended physical limitations on the part of her treating physicians, throughout the medical history presented to me." (R. at 22.) At Step Four, the ALJ determined that Ms. Hare had no relevant past work. (R. at 23.) At Step Five, the ALJ considered the testimony of Robert John Beadles, Jr., the Commissioner's vocational expert ("VE"). The VE testified that a person with Ms. Hare's age, education, work experience, and RFC could find work as a telephone solicitor, a machine operator, or a small products assembler. (R. at 32.) The VE also testified that his conclusions were consistent with the *Dictionary of Occupational*

*Titles*.  (R. at 33.)  Based on the VE's testimony, the ALJ concluded that Ms. Hare is not disabled.

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]

Ms. Hare raises four issues on appeal.  First, she contends that the ALJ improperly discredited the opinion of Dr. Donald W. Blanton that she is mentally retarded.   Second, she contends that, because she is mentally retarded, her impairments meet or medically equal a listed impairment, specifically Listing 12.05C. Third, she contends that the ALJ's physical RFC determination is not supported by substantial evidence.  Finally, she contends that the ALJ relied on testimony from the VE which conflicts with the *Dictionary of Occupational Titles*.

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The court finds that issues one, two, and four are meritless.  However, because the ALJ's physical RFC determination is not supported by substantial evidence, the court will reverse and remand this case for additional fact finding.

## A.    The ALJ Did Not Err in Discrediting Dr. Blanton's Opinion

Ms. Hare contends that, because Dr. Blanton performed objective IQ tests, the ALJ improperly discredited his opinion in favor of the opinions by Drs. Gragg and Sandusky, who performed no objective testing.  This argument fails.  The ALJ is entitled to weigh the medical opinion evidence in the record, *see* 20 C.F.R. § 404.1527(c), and can discount medical opinion evidence which is not supported by the record.  *See* 20 C.F.R. § 404.1527(c)(3); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).  The Eleventh Circuit "has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

Here, the ALJ discounted the opinion of Dr. Blanton as inconsistent with the record as a whole.  (R. at 18–19.)  Specifically, the ALJ noted that Ms. Hare achieved the eleventh grade without special education classes, that she reported receiving A's

and B's while in school, and that she can carry out many daily tasks without assistance (*e.g.*, shopping, handling money, driving, and caring for her children).

Furthermore, the opinions of Drs. Gragg and Sandusky can constitute substantial evidence. 20 C.F.R. § 404.1512(b)(6); *Richardson v. Perales*, 402 U.S. 389, 402 (1971). These opinions support the Commissioner's finding that Ms. Hare is not mentally retarded. They are also consistent with the record as a whole. For these reasons, the ALJ did not err in discrediting the opinion of Dr. Blanton.

**B.      The ALJ Did Not Err in Finding Ms. Hare Does Not Meet Listing 12.05C.**

This argument assumes that the ALJ improperly discredited the opinion of Dr. Blanton. As explained in the preceding section, the ALJ did not err in this regard. Thus, this argument fails.

**C.      Even Assuming that the VE's Testimony Conflicts with the *Dictionary of Occupational Titles*, the ALJ Did Not Err in Relying on the VE's Testimony.**

Ms. Hare contends that the VE's testimony is inconsistent with the *Dictionary of Occupational Titles*. Even assuming that Ms. Hare is correct, the Eleventh Circuit has held that the ALJ is entitled to rely on the VE's testimony when it conflicts with the *Dictionary of Occupational Titles*. *See Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999); *see also Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th

10

Cir. Aug. 31, 2007) (unpublished) (treating *Jones* as binding precedent).  Thus, this argument fails.

## D.     The ALJ's Physical RFC Determination Is Not Supported by Substantial Evidence.

The ALJ found that Ms. Hare could perform a limited range of sedentary work.[5]  (R. at 20.)  As described earlier, the ALJ limited Ms. Hare to occasional walking, standing, kneeling, crouching, and crawling.  The ALJ purportedly found Ms. Hare able to do these tasks based on the physical examination conducted by a non-treating physician, the psychological exams conducted by Drs. Gragg, Sandusky, and Blanton, and "the clear lack of any recommended limitations on the party of her treating physicians . . . ." (R. at 22.)  The court has scoured the referenced evidence, as well as the entire record, and can find <u>no support at all</u> for the physical limitations identified by the ALJ.   Because the ALJ's physical RFC determination is not supported by <u>any</u> evidence, the ALJ erred in determining that Ms. Hare can still work.

A claimant's RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545).  In

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

assessing a claimant's physical ability to work, the ALJ considers her ability to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *See* 20 C.F.R. § 404.1545(b). While the ALJ makes the ultimate decision on a claimant's RFC, *see* 20 C.F.R. § 404.1546(c), the ALJ is not qualified to interpret raw data in a medical record, *see Manso-Pizarro v. Sec'y of Health & Human Serv.*, 76 F.3d 15, 17 (C.A.1 (Puerto Rico),1996); *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D.Mass 1998). Moreover, the ALJ has a duty to develop a "full and fair record." *See Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). Therefore, "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984)).

In this case, the ALJ found that Ms. Hare's pedal edema could "be painful, particularly when associated with obesity" and noted that Ms. Hare's obesity "significantly increases the limitations caused by her pedal edema." (R. at 22.) The ALJ then said that his physical RFC determination was "based primarily on [Ms. Hare's] obesity and pedal edema." But the record lacks any evidence regarding Ms. Hare's ability to sit, stand, walk, crawl, kneel, or stoop after the alleged onset of her disability in February 2006. The ALJ was not qualified to determine, on his own, the extent that Ms. Hare's obesity and pedal edema limit her physical abilities. But that

12

is exactly what the ALJ did when he determined Ms. Hare's physical RFC from the current record.

The ALJ purportedly based his physical RFC determination on Ms. Hare's medical records.  Yet, none of the evidence referenced by the ALJ in his opinion supports the RFC he reached.  (*See* R. at 22.)  First, the report of the non-treating physician Dr. Richard S. Abney states that Ms. Hare appeared to have a normal range of motion in most of her joints.  (R. at 191.)  However, the report makes no assessment of (nor does it even mention) Ms. Hare's ability to work, and does not recommend that she exercise.  (*Id.*)  Second, the reports by Drs. Gragg, Sandusky, and Blanton assess only Ms. Hare's mental abilities, not her physical abilities.  Third, the ALJ noted that Ms. Hare is "capable of losing weight."  (R. at 22.)  He noted that she had lost fifty (50) pounds since Dr. Abney examined her, and apparently equated her weight loss with an ability to exercise.  But there is no evidence in the record that Ms. Hare actually lost weight through exercise, and not all weight loss occurs through exercise.  Fourth, the ALJ noted that Ms. Hare's treating physicians "have actually recommended against restriction and lobbied for more physical activity."  (*Id.*)  This conclusion overstates the record.  One treating physician stated that Ms. Hare "needs weight loss [and] exercise," but made this suggestion in 2003, well before Ms. Hare's alleged onset of disability.  (R. at 157.)  In 2009, another physician noted that Ms.

13

Hare needed to lose weight but said nothing about exercise. (R. at 252.) All other references to weight loss the court identified in the record merely mention that Ms. Hare needs to lose weight. (See R. at 262.) They say nothing about exercise. Finally, the ALJ emphasized that no physician has placed physical restrictions on Ms. Hare. (R. at 22.) But, a physician's failure to recommend restrictions is not evidence that a claimant does not have physical restrictions. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("Such silence is equally susceptible to either inference, therefore, no inference should be taken."). Thus, the absence of physical restrictions in Ms. Hare's medical records does not support the ALJ's RFC determination.

However, the court cannot end its inquiry with the evidence referenced by the ALJ. The court must consider the entire record to determine if substantial evidence exists to support the Commissioner's findings. *See* 42 U.S.C. § 405(g). The court has identified one piece of evidence—a state-agency physical RFC assessment completed by Phyllis Rinks—which was not cited by the ALJ and which might support the Commissioner's position. (R. at 212-19.) Rinks's 2007 assessment concludes Ms. Hare can do more than sedentary work. The court rejects this assessment for two reasons. First, Rinks's credentials are not in the record. Thus, the court cannot determine if Rinks is medically qualified to assess Ms. Hare's physical limitations. Second, and more importantly, Rinks explains that her physical RFC

14

assessment is based on Ms. Hare's past work as a cashier and Dr. Abney's medical report. (R. at 213–14). As explained earlier, Dr. Abney's report says nothing about Ms. Hare's physical limitations. And, Ms. Hare's past work as a cashier also tells us nothing about her physical abilities after February 2006. After all, Ms. Hare claims she quit her job as a cashier due to her health problems.

For the foregoing reasons, the court finds that the Commissioner's disability decision is not supported by substantial evidence. The record simply lacks any evidence to support the ALJ's physical RFC determination. Because the ALJ lacked information to make a proper determination, he should have ordered a consultive examination. When he failed to do so, he also failed in his duty to develop a full and fair record. As a result, he also erred at Step Five, when he used his unsubstantiated RFC determination to decide that Ms. Hare can still work. Of course, the ALJ's RFC determination is not necessarily the wrong one. In fact, Ms. Hare may be far less limited than the ALJ determined. But what the ALJ cannot do (but which he did do here) is base his RFC determination on silence in the record. Thus, the court reverses the decision of the ALJ and remands with instructions to develop a full and fair record on Ms. Hare's physical abilities. Once the ALJ has developed a full and fair record, the ALJ can properly determine her RFC, and, thereby, reach a legally sufficient disability decision.

## <u>CONCLUSION</u>

For the forgoing reasons, the decision of the Commissioner is due to be

**REVERSED** as explained in this opinion.  This case is **REMANDED** for further

proceedings consistent with this opinion.

**DONE** and **ORDERED** this the 31st day of August, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge